**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
Western Division**

**KENNETH BLAIR,
Individually and on behalf
of all others similarly situated,**

     **Plaintiff,**

**v.**

**MAPCO Express, Inc.,**

     **Defendant.**

Civil No. _____

**JURY DEMAND**

## CLASS ACTION COMPLAINT

Comes now the Plaintiff Kenneth Blair, individually and on behalf of all other similarly situated individuals, and files this Class Action Complaint alleging the following claims:

### NATURE OF THE CASE

1.     Plaintiff brings this action against MAPCO Express, Inc. ("Mapco" or "Defendant") for violations of the Federal Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681b(b)(2) and (3). The FCRA imposes several important requirements on employers that use a consumer report, commonly called a "background check," which are designed to protect consumers like the Plaintiff.

2.     Incorporated in 2001, Mapco operates a chain of 345 convenient stores in the Southeastern United States.

3.     Mapco employs individuals such as the Plaintiff in Alabama, Arkansas, Georgia, Kentucky, Mississippi, Tennessee, and Virginia. Mapco operates a support center in Franklin, Tennessee, and its corporate office is located in Brentwood, Tennessee.

4.     As part of its hiring process, Mapco uses background checks generated by Sterling

InfoSystems, Inc., d/b/a Sterling Talent Systems, to make employment decisions. These background checks contain a host of information about potential applicants, including purported criminal history. Because such employment decisions are based in whole or in part on the contents of the background checks, Mapco is obliged to adhere to certain strictures of the FCRA.

5.      Employers that seek to use background checks in their hiring process must disclose to applicants their intent to obtain background checks in a standalone document consisting solely of the disclosure. As a separate requirement, the employer must also obtain consumers' written authorization to procure the report.

6.      Properly disclosing the intent to obtain background checks and obtaining the appropriate authorization protects consumers' privacy by limiting the access to private information to only specific instances, namely, where employers have followed the FCRA's steps before they procure background reports.

7.      These rights and restrictions cannot be waived.

8.      When using criminal background reports for employment purposes, employers must, before declining, withdrawing, or terminating employment based in whole or in part on the contents of the report, provide job applicants like the Plaintiff with a copy of their respective background reports as well as a written summary of their rights under the FCRA.

9.      Providing a copy of the criminal background report as well as a statement of consumer rights before making a final adverse employment decision arms the nation's millions of job applicants with the knowledge and information needed to challenge inaccurate, incomplete, and misleading public-records-based reports. The FCRA is designed to permit individuals whose reports are inaccurate with ample time to identify the inaccuracies and correct them before the employer has made an employment decision.

10.     To complete this process—consideration of the employment reports and sending of the mandatory FCRA notices—Mapco hired Sterling, a consumer reporting agency, to generate the background checks.

11.     Plaintiff brings a nationwide class claim against Mapco under 15 U.S.C. § 1681b(b)(2) because upon information and belief, the disclosure form it provided Plaintiff and Class Members was defective in that it contained additional, extraneous information and therefore does not consist "solely of the disclosure."

12.     Plaintiff also brings a nationwide class claim against Mapco under 15 U.S.C. § 1681b(b)(3) because, as a systematic omission in its hiring process, Mapco failed to provide Plaintiff and other consumers with a copy of the criminal background report or a summary of rights under the FCRA *before* taking an adverse employment action against them.

## PARTIES

13.     Plaintiff Kenneth Blair is a "consumer" as defined by 15 U.S.C. § 1681a.

14.     At the time of his application for employment, Mr. Blair lived in Memphis, Tennessee, which is within the territorial confines of the Western District of Tennessee.

15.     Mapco is a for-profit, privately held company conducting business and hiring employees in the Western District of Tennessee and in the United States.

16.     Mapco is also a "person" using "consumer reports" to make "employment decisions" and take "adverse action" against "consumers," as those terms are defined by 15 U.S.C. § 1681a.

## JURISDICTION AND VENUE

17.     The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1681p.

18.    Venue is proper in the Western District of Tennessee because Defendant is subject to personal jurisdiction in this District, maintains a place of business in this District, and makes employment decisions regarding individuals residing in this District. 28 U.S.C. § 1391(c). Further, Plaintiff was a resident of this District and Division at the time of his injury.

19.    The Court has constitutional jurisdiction as the rights prosecuted herein are substantive and address concrete harm suffered by the Plaintiff and each class member.

20.    Specifically, Defendant's refusal to make the FCRA disclosures alleged and described herein—substantively and in the manner and timing required by the statute—caused Plaintiff and each class member injury. Plaintiff was denied information to which he was statutorily entitled, and that denial of information caused him injury, in that he was denied the opportunity to correct his background report, resulting in a denial of an employment opportunity.

## GENERAL FACTUAL ALLEGATIONS

21.    In June, 2015, Plaintiff applied to work for Mapco Express, Inc. As a part of the application process a consumer report was obtained.

22.    Before conducting the background check, Mapco presented Plaintiff with its standard Fair Credit Reporting Act Notice and Disclosure form. Upon information and belief, Defendant obtained this form from Sterling. The supposed purpose of this form is to comply with the disclosure requirements of Section 1681b(b)(2). Numerous courts have considered whether the standard form provided by Sterling to employers fails to comply with Section 1681b(b)(2). *See, e.g.*, *Robrinzine v. Big Lots Stores, Inc.*, No. 15-cv-7239, 2016 WL 3459733, at *3 (N.D. Ill. June 24, 2016).

23.    Plaintiff values his privacy and, all other things equal, would not share his personal consumer report with any potential employer, including Mapco.

24.     Mapco ordered a background check on Plaintiff from Sterling on or about June 19, 2015.

25.     Sometime after July 6, 2015, Plaintiff received a copy of his background report with a letter dated July 6, 2017, that purported to describe Mapco's application process, specifically that Mapco "will not make a final decision about hiring you until you have had the legally prescribed time of 5 business days to correct any inaccuracies." Mapco further instructed Plaintiff to take the following action, should there be any inaccuracies in his report: "If there are any inaccuracies, incomplete information, or if you dispute any of the information reported, please contact Sterling InfoSystems, Inc. We obtain the information from them, and we do not have the ability to change anything in the report."

26.     This letter is intended to comply with what is known as the "pre-adverse action" notice requirement of 15 U.S.C. § 1681b(b)(3).

27.     Plaintiff's background report did in fact have inaccuracies. Specifically, Sterling inaccurately reported a misdemeanor conviction for domestic assault that had been expunged, a misdemeanor contempt of court that was related to the expunged conviction, and a misdemeanor simple assault conviction that related to another individual.

28.     On July 9, 2015, within the five-day period noted in Mapco's letter, Plaintiff contacted Sterling and contested the contents of his report. In response, Sterling corrected many, but not all, of the inaccuracies contested by Plaintiff.

29.     Plaintiff did not contact Mapco about the inaccuracies because its first letter specifically told him not to.

30.     On July 27, 2015, Mapco sent Plaintiff a second letter in order to "advise [him] that we cannot give you any further consideration for employment." This time, contrary to its first

letter, Mapco indicated that "[i]f you are able to prove that the information contained in the report is not accurate please make us aware of that fact, provide proof, and we will allow you to reapply."

31.     This letter, discovery will show, was Mapco's attempt to comply with Section 1681m(a)'s requirement of notice of a final adverse action against Plaintiff.

32.     In fact, as of July 6, 2015, Mapco had already taken an "adverse action," in that it had already determined that Plaintiff was ineligible for hire. No other action was required by either Mapco or Sterling to cause the rejection of Plaintiff's application. After the grading of "ineligible for hire" and the sending of the pre-adverse action letter, the second letter is automatically mailed after the passing of a specified number of days.

33.     The finality of Mapco's decision as of its pre-adverse action letter is evident from its own language, in which it directs the consumer to dispute the inaccurate information contained in the background report with only Sterling, rather than to correct—or even discuss—the information with Mapco. Further, Mapco does not require that Sterling provide it with an updated report, further demonstrating that it had already made its decision as of the pre-adverse action letter.

34.     No one at Mapco provided Plaintiff with a copy of his background report or written summary of his FCRA rights prior to these adverse actions.

35.     Upon information and belief, Mapco has created and implemented national, uniform hiring and staffing policies, procedures, and practices under which it operates. These policies, procedures, and practices cover the use of "background checks" or "consumer reports" to screen potential employees.

36.     As part of that process, Mapco presents all applicants with the same (or substantially the same) disclosure and authorization form it presented to Plaintiff.

37.    Mapco violated Section 1681b(b)(2) every time it obtained a consumer report based on the form (or one substantially similar to the form) it provided Plaintiff.

38.    Mapco routinely uses consumer reports to screen prospective employees, using consumer reports prepared by Sterling. Either Sterling or Mapco will promptly review the consumer reports and make a determination regarding the employability of an applicant, without first providing copies of the consumer report to a job applicants against whom it takes an adverse action based in whole or part on the report.

39.    As a matter of practice, Mapco regularly fails to provide copies of the FTC or CFPB notice of rights to job applicants against whom it takes an adverse action based in whole or part on a consumer report, before taking that adverse action.

40.    As a matter of course, Mapco uses the same business process for obtaining and using consumer reports, and for the "adjudication" of employment applications as it did with Plaintiff and members of the Class described below. In directing that consumers contest inaccurate information with only Sterling and by not thereafter seeking the corrected report from Sterling before taking an adverse action, Mapco deprives consumers of any reasonable time period by which to dispute or discuss any inaccurate or derogatory information in their background reports before a final hiring decision is made.

41.    Because Mapco proceeds in this manner, Mapco violates Section 1681b(b)(3) each and every time because the adverse action is final before Mapco ever mails even the pre-adverse action notice to an applicant.

42.    Mapco's violation of 15 U.S.C. § 1681b(b)(2) and (b)(3) have been willful, wanton, and reckless in that it knew, or should have known, that it was failing to comply with the requirements of the FCRA. The FCRA was enacted in 1970, and Defendant has had years to

become compliant but has failed to do so. Additionally, Mapco, a large regional employer, was aware of its obligations under the FCRA as they relate to employment because it hired Sterling to perform its background checks and to supply form notices. Mapco was therefore aware of the requirements imposed upon it by the FCRA, and failed to craft a system that would ensure compliance with those requirements. Mapco's willful disregard of its duties violates the FCRA as a matter of law, and it exacts serious consequences on job applicants and interstate commerce.

## ADDITIONAL CONCRETE HARM

43.    By implementing these policies, Mapco deprived Plaintiff and class members of their congressionally mandated rights of privacy and to information to which Congress has deemed them entitled.

44.    Section 1681b(b)(2)(A) "establishes a right to specific information in the form of a clear and conspicuous disclosure. The statutory requirement that the disclosure be made in 'a document that consists solely of the disclosure' helps to implement the textual command that the disclosure be clear and conspicuous." *Thomas v FTS USA, LLC*, 193 F. Supp. 3d 623, 631 (E.D. Va. 2016).

45.    Section 1681b(b)(2)(A) also "establishes a right to privacy in one's consumer report that employers may invade only under stringently defined circumstances." *Id*. at 631–32

46.    "Section 1681b(b)(3), like § 1681b(b)(2)(A), provides the consumer with a legally cognizable right to specific information. Specifically, . . . [consumers have] the right to receive a copy of the report on which the adverse action is based and a summary of their rights under the FCRA before the contemplated adverse employment action is taken." *Id*. at 637–38.

47.    "Relatedly, [§ 1681b(b)(3)] provides consumers against whom adverse employment action is contemplated with a right to have time to discuss the reports with their

current or prospective employers and to correct the reports if necessary before the contemplated adverse action is taken." *Id*. at 638.

48.     The protections established by § 1681b(b)(2)(A) and by § 1681b(b)(3) "are clearly substantive, and neither is technical nor procedural." *Id*. at 632.

49.     By failing to provide Plaintiff and the class members that he seeks to represent with a clear and conspicuous disclosure in writing in a document that consists solely of the disclosure that a consumer report may be obtained for employment purposes as required by § 1681b(b)(2)(A), Defendant denied Plaintiff and class members information to which they were specifically entitled to under the FCRA.

50.     By procuring the consumer reports of Plaintiff and the class members that he seeks to represent in this matter without making the disclosure required by § 1681b(b)(2)(A), Defendant has unlawfully invaded Plaintiff and the class members' rights of privacy created by the FCRA. *See Thomas*, 193 F. Supp. 3d at 636. ("Thomas . . . has alleged that Defendants invaded the statutory right to confidentiality of his personal information by obtaining his consumer report without first providing the required disclosure or obtaining his written consent, as required by § 1681b(b)(2)(A). This allegedly unauthorized disclosure of personal information constitutes an invasion of the statutory right to privacy and a concrete injury sufficient to confer Article III standing.").

51.     The invasion of privacy exists regardless of the fact that a consumer may have signed the disclosure form, and regardless of the accuracy of any information in the resulting consumer report.

52.     By taking adverse action against Plaintiff and the class members without first providing them with copies of their consumer reports, Defendant denied Plaintiff and the class

members information to which they were specifically entitled to under the FCRA.

53.     When Mapco took adverse action against Plaintiff and the class members without providing them sufficient time to discuss the consumer reports and to correct the reports if necessary, Mapco denied Plaintiff and the class members the opportunity that Congress provided through the FCRA.

54.     The informational injuries, the breach of privacy injury, and the injury resulting from the deprivation of the opportunity to explain and discuss the issues raised by derogatory information in their consumer reports suffered by Plaintiff and the class members as a result of Defendant's violations of §§ 1681b(b)(2)(A) and 1681b(b)(3) are particularized because those injuries happened to Plaintiff and each Class Member.

55.     The informational injuries suffered by Plaintiff and the class members as a result of Defendant's violations of §§ 1681b(b)(2)(A) and 1681b(b)(3) are real and concrete because "it is well-settled that Congress may create a legally cognizable right to information, the deprivation of which will constitute a concrete injury [and] [b]y extension, it is well within Congress' power to specify the form in which that information must be presented." *Thomas*, 193 F. Supp. 3d at 635.

56.     The invasion of privacy injury suffered by Plaintiff and the class members as a result of Defendant's violations of § 1681b(b)(2)(A) is real and concrete because "it has long been the case that an unauthorized dissemination of one's personal information, even without a showing of actual damages, is an invasion of one's privacy that constitutes a concrete injury sufficient to confer standing to sue" and Congress has extended the right of privacy to information contained within one's consumer report. *Id*. at 636.

57.     With § 1681b(b)(3), Congress identified a substantial risk of harm caused by the dissemination of inaccurate or misleading information regarding consumers, who could potentially

10

suffer an adverse and often secret employment decision without an opportunity to address the

underlying information or to know their rights. *See* Sen. Rep. No. 104-185, 35 (Dec. 14, 1995).

## LEGAL REQUIREMENTS

58.    The FCRA, in Section 1681b(b)(2), regulates the conduct of persons who obtain a

"consumer report" about employees or applicants:

> Except as provided in subparagraph (B) [circumstances not present here], a person
> may not procure a consumer report, or cause a consumer report to be procured, for
> employment purposes with respect to any consumer, unless --
>
> > (i) a clear and conspicuous disclosure has been made in writing to
> > the consumer at any time before the report is procured or caused to
> > be procured, in a document that consists solely of the disclosure, that
> > a consumer report may be obtained for employment purposes; and
> >
> > (ii) the consumer has authorized in writing (which authorization
> > may be made on the document referred to in clause (i)) the
> > procurement of the report by that person.

59.    Courts have roundly held that the disclosure must be in a standalone document, and

that "consists solely of the disclosure" means just that.

60.    This requirement cannot be waived.  It is a strict bar upon the use of a consumer's

private consumer report information.

61.    Upon information and belief, the Mapco disclosure includes, at the very least, a

release of liability, which is an impermissible component of the release. In addition, discovery will

show that the disclosure is needlessly wordy, bombarding applicants with a jumble of unnecessary

information that has nothing to do with the disclosure requirement of Section 1681b(b)(2).

62.    As a result of its defective disclosure, Defendant procured consumer reports

regarding Plaintiff and those similarly situated for employment purposes without first obtaining a

proper, written authorization to do so.

11

63.    Section 1681b(b)(3)(A) of the FCRA regulates the conduct of any person who uses a "consumer report" to take an adverse action against any employees or prospective employees as follows:

> Except as provided in subparagraph (B) [in cases of a consumer applying for a position over which the Secretary of Transportation may establish qualifications], in using a consumer report for employment purposes, before taking any adverse action based in whole or in part on the report, the person intending to take such adverse action shall provide to the consumer to whom the report relates --
>
> (i)    a copy of the report; and
>
> (ii)    a description in writing of the rights of the consumer under this subchapter, as prescribed by the Federal Trade Commission under section 1681g(c)(3) of this title.

64.    The purpose of § 1681b(b)(3)(A) is to provide a prospective or current employee a sufficient amount of time to review the consumer report, correct any inaccuracies, to notify the prospective employer of these inaccuracies before an adverse action is taken and generally to discuss the contents of the report with the prospective employer.

65.    This statutory requirement was enacted by Congress expressly to protect consumer privacy by restricting the circumstances under which a person (in this instance Mapco) could obtain and use a consumer's personal information consumer report.

66.    In enacting this FCRA provision, Congress also expressly sought to guarantee important material information be provided to Plaintiff and consumers like him with respect to employer use of a consumer report for an employment adverse action.

67.    Plaintiff and each putative class member has been substantively harmed and injured by Mapco in the violation of their personal privacy and in the deprivation of the congressionally mandated information.

## DEFENDANT ACTED WILLFULLY

68.     Defendant knew or should have known about its legal obligations under the FCRA. These obligations are well established in the plain language of the FCRA and in the promulgations of the Federal Trade Commission and Consumer Financial Protection Bureau.

69.     Defendant obtained or had available substantial written materials which apprised it of its duties under the FCRA.

70.     The written disclosure which precedes a written authorization for a prospective employer to obtain a consumer report for employment purposes must be presented in a clear, conspicuous, stand-alone form. *Thomas v. FTS USA, LLC*, No. 3:13-CV-825, 2016 WL 3653883, at *7 (E.D. Va. June 30, 2016); *Milbourne v. JRK Residential Am., LLC*, 92 F. Supp. 3d 425, 434 (E.D. Va. 2015).

71.     Defendant knew that it had an obligation to provide a stand-alone disclosure and obtain the consumer's authorization before procuring a consumer report.

72.     The FCRA requires that, prior to procuring consumer reports, employers must certify to the consumer reporting agency that they will comply with the FCRA's stand-alone disclosure and authorization requirements. *See* 15 U.S.C. § 1681b(b)(1).

73.     In accordance with their standard procedures, the consumer reporting agencies from which Defendant acquired consumer reports during the five years preceding the filing of this Complaint, including Sterling, required Defendant to certify that it would comply with the stand-alone disclosure provisions of the FCRA.

74.     Before procuring Plaintiff's report, Defendant did, in fact, certify to Sterling that it would comply with the stand-alone disclosure and authorization provisions of the FCRA.

75.     In its contract with Sterling, Defendant also agreed that before obtaining a

consumer report, Defendant would provide a disclosure in writing to the consumer that a consumer report will be obtained for employment purposes and that such disclosure will be made in a document consisting solely of the disclosure.

76.    By systematically inserting extraneous information into Plaintiff's and other class members' disclosures, Defendant willfully violated 15 U.S.C. § 1681b(b)(2)(A).

77.    Before a person takes an adverse employment action, it must provide two documents to the prospective employee. *See* Letter from Clark W. Brinckerhoff to Erick J. Weisberg (June 27, 1997), FTC Informal Staff Letter ("Brinckerhoff Letter II") (noting that taking action a period of five business days after notice "appears reasonable."); *Williams v. Telespectrum, Inc.,* Civil Action No. 3:05cv853 (E.D. Va. 2006), Report and Recommendation of Magistrate Judge Hannah Lauck dated November 7, 2006, adopted by Judge R. Payne January 8, 2005, (holding that a user of a consumer report must provide to the consumer a copy of the report and disclosure of rights a sufficient amount of time before it takes adverse action so that the consumer can rectify any inaccuracies in the report, and simultaneous provision of the report does not satisfy this requirement); *Kelchner v. Sycamore Manor Health Center,* 305 F. Supp. 2d 429, 435 (M.D. Pa. 2004); (holding a reasonable period for the employee to respond to disputed information is not required to exceed five business days following the consumers receipt of the consumer's report from the employer); *Beverly v. Wal-Mart Stores, Inc.*, No. 3:07cv469 (E.D. Va. 2009) (requiring ChoicePoint, by consent order, to mail adverse action notices on behalf of its customers no earlier than five business days after the mailing of the pre-adverse action notices).

78.    To ensure knowing compliance with the FCRA, Congress requires that before any consumer reporting agency may provide consumer reports on an applicant, the reporting agency must have obtained a certification from the employer that it will comply with 15 U.S.C. §

1681b(b)(3) whenever the employer decides to take adverse action based in whole or in part on the consumer report.  15 U.S. C. § 1681b(b)(1)(A).

79.    Upon information and belief, Defendant knowingly executed a certification providing that it would comply with the various provisions of the FCRA whenever adverse action was contemplated or taken based in whole or in part on information contained in a consumer report.

80.    Despite its certification, Defendant knowingly violated 15 U.S.C. § 1681b(b)(2) and (b)(3).

81.    Despite knowing of these legal obligations, Defendant acted consciously in breaching its known duties and depriving Plaintiff and other members of the class of their rights under the FCRA.

82.    As a result of these FCRA violations, Defendant is liable to Plaintiff and to each class member, for statutory damages from $100 to $1,000 pursuant to 15 U.S.C. § 1681n(a)(1)(A), plus punitive damages pursuant to 15 U.S.C. § 1681n(a)(2) for the violations alleged herein, and for attorneys' fees and costs pursuant to §§ 1681n and 1681o.

## CLASS ACTION ALLEGATIONS

83.    Pursuant to Federal Rule of Civil Procedure 23 and 15 U.S.C. § 1681b(b)(2), Plaintiff bring this action for himself and on behalf of a class (the "Impermissible Use Class"), defined as:

> All natural persons residing in the United States and its Territories regarding whom, within five years prior to the filing of this action and extending through the resolution of this action, the Defendant procured or caused to be procured a consumer report for employment purposes using a written disclosure containing language substantially similar to the disclosure form provided to Mr. Blair and described above.

> Specifically excluded from this Class are: (a) all federal court judges who preside over this case, their spouses and persons who work for them; (b) all persons who

elect to exclude themselves from the Class; (c) all persons who have previously executed and delivered to Mapco releases of all their claims for all of their Class claims; (d) Plaintiff's counsel and persons who work for them or are related to them by marriage or as immediately family; and (e) Mapco's officers, directors, agents, and representatives and their family members.

84.     Pursuant to Federal Rule of Civil Procedure 23 and 15 U.S.C. § 1681b(b)(3), Plaintiff brings this action for himself and on behalf of a class (the "Adverse Action Class"), defined as:

> All natural persons residing in the United States (including all territories and other political subdivisions of the United States) (a) who submitted an employment application or other request for placement with Mapco; (b) who were the subject of a consumer report which was used by Mapco to make an employment decision from five years before the filing of this action to the present; (c) about whom Mapco determined were not eligible for hire; and (d) to whom Mapco did not provide a copy of the consumer report and summary of rights as required by 15 U.S.C. § 1681b(b)(3) at least five business days before the date the consumer's report was first determined to be ineligible for hire.
>
> Specifically excluded from this Class are: (a) all federal court judges who preside over this case, their spouses and persons who work for them; (b) all persons who elect to exclude themselves from the Class; (c) all persons who have previously executed and delivered to Mapco releases of all their claims for all of their Class claims; (d) Plaintiff's counsel and persons who work for them or are related to them by marriage or as immediately family; and (e) Mapco's employees, officers, directors, agents, and representatives and their family members.

85.     **Numerosity.** The Impermissible Use Class and Adverse Action Class ("Classes") are so numerous that joinder of all members is impracticable. Based on information and belief, the Classes are comprised of at least thousands of members who are geographically dispersed throughout the country so as to render joinder of all class members impracticable.  The names and addresses of the class members are identifiable through documents maintained by the Defendant, and the class members may be notified of the pendency of this action by published and/or mailed notice.

86.    **Existence and Predominance of Common Questions of Law and Fact.**
Common questions of law and fact exist as to all members of the Classes. The total focus of the
litigation will be Mapco's uniform conduct and procedures; whether the disclosure form violates
Section 1681b(b)(2) because of its release language and extraneous information; whether Mapco
provided the required notices; when it did so; and, whether Mapco acted willfully in its failure to
design and implement procedures to assure compliant delivery and/or timing of these notices.  The
appropriate amount of uniform statutory and/or punitive damages under 15 U.S.C. § 1681n is a
common question for members of the Classes.

87.    **Typicality.** Plaintiff's claims are typical of the other class members' claims. As
described above, Mapco uses common practices and automated systems in committing the conduct
that Plaintiff alleges damaged him and the Classes. Plaintiff seeks only statutory and punitive
damages for his classwide claims and, in addition, Plaintiff is entitled to relief under the same
causes of action as the other members of the Classes. Mapco uniformly breached the FCRA by
engaging in the conduct described above, and these violations had the same effect on each member
of the Classes.

88.    **Adequacy.** Plaintiff will fairly and adequately protect the interests of the Classes.
Plaintiff's interests coincide with, and are not antagonistic to, other class members' interests.
Additionally, Plaintiff has retained counsel experienced and competent in complex, commercial,
multi-party, consumer, and class-action litigation. Plaintiff's Counsel has prosecuted complex
FCRA class actions across the country.

89.    **Superiority.** Questions of law and fact common to the Classes predominate over
questions affecting only individual members, and a class action is superior to other available
methods for fair and efficient adjudication of the controversy. The statutory and punitive damages

sought by each member are such that individual prosecution would prove burdensome and expensive given the complex and extensive litigation necessitated by Mapco's conduct. It would be virtually impossible for the members of the Classes to individually, effectively redress the classwide wrongs done to them, particularly in light of the fact that the claims are in part based on the failure of Mapco to give class members the proper notice. Even if the members of the Classes themselves could afford such individual litigation, it would be an unnecessary burden on the courts.

90.    Furthermore, individualized litigation presents a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and to the court system presented by the complex legal and factual issues raised by Mapco's conduct. By contrast, the class action device will result in substantial benefits to the litigants and the Court by allowing the Court to resolve numerous individual claims based upon a single set of proof in just one case.

## CAUSES OF ACTION

### COUNT ONE: VIOLATIONS OF 15 U.S.C. § 1681b(b)(2)(A)

91.    Plaintiff incorporates by reference those paragraphs set out above as though fully set forth herein.

92.    Mapco's failure to provide members of the Impermissible Use Class with a standalone disclosure and properly obtain their authorization for Mapco to obtain consumer reports for employment purposes violated 15 U.S.C. § 1681b(b)(2)(A).

93.    The conduct, action, and inaction of Mapco were willful, rendering it liable for statutory and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

94.    Plaintiff and other members of the Impermissible Use Class are entitled to recover

costs and attorneys' fees as well as appropriate equitable relief from Mapco in an amount to be determined by the Court, pursuant to 15 U.S.C. § 1681n.

### COUNT TWO: VIOLATIONS OF 15 U.S.C. § 1681b(b)(3)(A)

95.     Plaintiff incorporates by reference those paragraphs set out above as though fully set forth herein.

96.     Mapco's failure to provide Plaintiff and members of the Adverse Action Class with a copy of the consumer report upon which it based its decision to take the adverse action, prior to taking such action, violated 15 U.S.C. § 1681b(b)(3)(A)(i).

97.     Likewise, Mapco's failure to provide Plaintiff and members of the Adverse Action Class the mandated FTC/CFPB Summary of FCRA Rights, prior to taking such action, violated 15 U.S.C. § 1681b(b)(3)(A)(ii).

98.     Mapco's creation of a system in which it requires consumers dispute inaccurate information with only Sterling, but thereafter does not obtain from Sterling an updated background report, robs consumers of a reasonable opportunity to dispute inaccurate information in their background reports, further violating Section 1681b(b)(3).

99.     Mapco's obtaining and use of Plaintiff and class members' consumer reports without compliance with § 1681b(b)(3) violates 15 U.S.C. § 1681b(f).

100.    The conduct, action, and inaction of Mapco were willful, rendering it liable for statutory and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

101.    Plaintiff and members of the Adverse Action Class are entitled to recover costs and attorneys' fees as well as appropriate equitable relief from Mapco in an amount to be determined by the Court, pursuant to 15 U.S.C. § 1681n.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff and the class members pray for relief as follows:

1.     That an order be entered certifying the proposed Classes under Rule 23 of the Federal Rules of Civil Procedure and appointing Plaintiff and their Counsel to represent the Classes;

2.     That judgment be entered for the proposed Classes against Mapco for statutory damages and punitive damages for violation of 15 U.S.C. § 1681b, pursuant to 15 U.S.C. § 1681n;

3.     That the Court award costs and reasonable attorneys' fees, pursuant to 15 U.S.C. §§ 1681n and 1681o; and,

4.     That the Court grant such other and further relief as may be just and proper, including but not limited to any equitable relief that may be permitted.

**A TRIAL BY JURY IS DEMANDED.**

Dated: July 5, 2017

Respectfully submitted,

**KENNETH BLAIR,** *individually and on behalf of and all others similarly situated*

By: /s/ Matthew A. Dooley
Matthew A. Dooley (0081482)
O'Toole McLaughlin Dooley & Pecora, CO LPA
5455 Detroit Road
Sheffield Village, Ohio 44054
Telephone:     440-930-4001
Facsimile:     440-934-7208
Email:          mdooley@omdplaw.com

Leonard A. Bennett, VSB No. 37523*
Craig C. Marchiando VSB No. 89736*
Elizabeth W. Hanes, VSB No. 75574*
**CONSUMER LITIGATION ASSOCIATES, P.C.**
763 J. Clyde Morris Blvd., Suite 1-A
Newport News, VA 23601
Telephone: (757) 930-3660

Facsimile: (757) 930-3662
Email: lenbennett@clalegal.com
Email: craig@clalegal.com
Email: elizabeth@clalegal.com


Kristi C. Kelly, Esq., VSB #72791*
Andrew J. Guzzo, Esq., VSB #82170*
KELLY & CRANDALL, PLC
3925 Chain Bridge Road, Suite 202
Fairfax, VA 22030
(703) 424-7572
(703) 591-0167 Facsimile
Email: kkelly@kellyandcrandall.com
Email: aguzzo@kellyandcrandall.com

*Attorneys for the Plaintiff*

* Pro Hac Vice Application forthcoming